**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : Case No. 10-11281 (CSS) |
|      Red Disposal, LLC, | : |
| | : |
|        Debtor. | : **Hearing Date: To Be Determined** |
| | : **Objection Deadline: To Be Determined** |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 363 AND FEDERAL RULES
OF BANKRUPTCY PROCEDURE 4001 AND 6004 (I) AUTHORIZING THE
DEBTOR TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION, AND (III) SCHEDULING A FINAL HEARING**

The above-captioned debtor and debtor-in-possession (the "Debtor"), hereby moves (the "Motion") this Court for the entry of interim and final orders pursuant to sections 105, 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of this Court (the "Local Rules") authorizing the Debtor to use cash collateral ("Cash Collateral"), granting adequate protection, and scheduling a further and final hearing on the Motion. In support of the Motion, the Debtor respectfully states as follows:

**Jurisdiction and Venue**

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

2.      Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105, 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2.

**Background**

4.     On April 16, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.     The Debtor continues to operate its business and possess its property as a debtor-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.

6.     Debtor Red Disposal, LLC is an entity operating in Delaware and Pennsylvania providing construction and demolition debris removal services primarily, as well as permanent compactor hauling and disposal.

7.     At the current time, Wilmington Savings Fund Society, FSB ("WSFS") is owed approximately $225,000 for Commercial Loan No. 500054291-0099 plus accrued interest thereon and other related fees, and approximately $32,500 for Commercial Loan No. 500054291-9001 plus accrued interest thereon and related fees. Additionally, PNC Bank ("PNC") is owed approximately $215,000 regarding Account number 602744771 plus accrued interest thereon and other related fees. Finally, South Coast Surety Insurance Services, Inc. ("SCS"; and collectively with PNC and WSFS, the "Banks") is owed $50,000 towards a surety bond obtained by the Debtor.

8.     The Debtor, pre-petition, had requested a restructuring of the loans from the Banks in order to pay its subcontractors and suppliers. The Debtor was unable to obtain that concession.

9.     In anticipation of a disagreement regarding continued construction funding, the Debtor has prepared a budget (the "Budget", a copy of which is attached hereto as Exhibit A) which shows that through the use of proceeds of existing waste disposal operations, the Debtor

can fund all of its operations. The Debtor avers that by these continued operations the Debtor has a better likelihood of paying the Banks in full and has the potential to provide a distribution to unsecured creditors.

10. The Debtor requires the operations of an additional truck to fund continuing waste disposal operations, along with other operations required to maintain the Debtor. Once proceeds are generated which exceed the cash needs of the Debtor to maintain its waste disposal operations, the Debtor will commence principal payments to the Banks as set forth in the Budget.

11. The Debtor avers that by use of the cash collateral, the monthly profits of the Debtor will increase.

12. The continued use of cash collateral and the rollover of proceeds will allow the Debtor to continue waste disposal operations, and provide payment to the Banks and pay all post-petition obligations.

13. The Budget commences the week ending April 18, 2010 with actual revenue received. The Budget details all operations in each month, accounts receivable, cash requirements, all costs of administration and a paydown of the loans.

14. The Debtor avers that it will be able to fund a plan to pay some distribution to pre-petition unsecured creditors by operating its business in this manner.

15. The Budget shows that the Debtor will generate a net income of $12,452 in cash received through the end of the week ending June 6, 2010. These proceeds will be retained by the Debtor to fund its operations and repay the Banks.

16. In order to maintain the Debtor's operations, Debtor requires the use of cash collateral for the payment of expenses as more specifically set forth in the Budget. Through the

payment of the above referenced expenses, the Debtor will be able, not only to maintain the status quo, but also to facilitate its reorganization and enhance the collateral.

## Relief Requested

17.     By and through this Motion, the Debtor seeks the entry of interim and final orders pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code, and Bankruptcy Rule 4001:

(a)     granting and authorizing the Debtor to use cash collateral on an interim basis in accordance with the budget (the "Budget") attached hereto as Exhibit "A," and pursuant to the terms and conditions contained and described in the proposed Interim Order, a copy of which is attached hereto as Exhibit "B".

(b)     approving the form and manner of service of notice of this Motion;

(c)     scheduling a final hearing to consider entry of a Final Order granting and authorizing the Debtor to use cash collateral in accordance with and for the time period set forth in the Budget (the "Final Hearing"); and

(d)     approving the form and manner of notice of the Final Hearing.

## Basis for Relief Requested

18.     Section 363 of the Bankruptcy Code governs a debtor's use of cash collateral and provides in pertinent part:

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

\* \* \*

(b)   (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section

(3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The Court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

*See* 11 U.S.C. § 363(a) and (b).

19.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 15 days after service of such a motion. Bankruptcy Rule 4001(b) also provides the bankruptcy court, upon request, with the authority to conduct a preliminary hearing on the motion and authorize the restricted use of cash collateral to the extent necessary to avoid immediate and irreparable damage to the debtor.

20.     Approval of the Debtor's authority to use Cash Collateral on a 30-day interim basis pending the Final Hearing is necessary to provide the Debtor immediate use of funds, which will allow the Debtor to pay essential operations and administrative costs. The Debtor's immediate cash needs, for which it seeks authorization, arise by virtue of its need to pay post-petition obligations critical to the continued operations of its business, such as utility, maintenance, insurance and, and other similar vital expenses to maintain operations.

21.     The Budget provides for payments of necessary expenses and capital expenditures. The Budget does not contemplate any additional borrowings to meet its 30-day interim Cash Collateral request, and the amounts set forth in the Budget are reasonably

anticipated to be sufficient to cover all anticipated administrative expenses that may accrue during the Interim Cash Collateral Period (as defined below).

22.      The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business in chapter 11.  The Debtor requires immediate authority to use Cash Collateral to continue its business operations without interruption toward the objective of formulating an effective plan of reorganization.  The Debtor's interim use of Cash Collateral to the extent and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to the estates pending a final hearing.  The amount of Cash Collateral authorized to be used pending a final hearing or entry of a final order will not exceed by more than ten percent (10%) each line item set forth in the Budget (the "Interim Cash Collateral Amount"), for the time period from the Petition Date through the week of June 6, 2010 (the "Interim Cash Collateral Period").

23.      The Debtor may expend amounts up to a variance of ten percent (10%) as to any line item of the Budget, provided the aggregate expenditures do not exceed one hundred ten percent (110%) of the aggregate budgeted expenditures for any calendar month.  To the extent that the Debtor does not expend the entire amount set forth in the Cash Collateral Budget for any particular line item expense during any particular time period in the Budget, the unused funds may be used by the Debtor to satisfy any "shortfall" in any line item in the Budget for any time period, provided the aggregate expenditures do not exceed one hundred ten percent (110%) of the aggregate budgeted expenditures for the entire period of time during which the Debtor is authorized to use Cash Collateral.

24.      Absent the authority to use Cash Collateral, the Debtor will be unable to pay for the services that are essential to the maintenance of its operations and the preservation of the

going-concern value of its business.  In contrast, the authority to use cash collateral will provide the Debtor with liquidity to manage its business while the Debtor attempt to reorganize.  Accordingly, the use of cash collateral is crucial, and the Debtor requests the authority to use cash collateral in accordance with the terms of the Interim Order.

25.     Under section 363(c)(2) of the Bankruptcy Code, "The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless...(B) the court, after notice and a hearing, authorizes such use, sale, or lease...."  The use of a secured creditor's cash collateral is conditioned upon the provision of adequate protection by the Debtor.

26.     The purpose of providing adequate protection is to protect the value of the creditor's interest in collateral from diminution during the course of the proceedings while the debtor is using the secured creditor's property.  *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D.Col. 1995). *See, also, In re Cann & Saul Steel Co.*, 76 B.R. 479 (Bankr. E.D. Pa. 1987); and *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate Protection is designed to preserve the secured creditor's position at the time of the bankruptcy.") The creditor is only entitled to protection of the value of the collateral supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs.  *Id.* at 584-85, *citing, United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 365 (1988).

27.     Section 361 of the Bankruptcy Code provides three nonexclusive methods of providing adequate protection of an entity's interest in property, specifically, (i) cash payments, (ii) replacement liens, or (iii) other methods that will result in the realization of the indubitable equivalent of an entity's interest in the property.  *See*, 11 U.S.C. § 361.  This section is written in the disjunctive, and any one form of adequate protection may suffice.  *In re Swedeland Dev.*

*Group*, 16 F.3d 552 (3rd Cir. 1994) (definition of adequate protection is not expressly defined by the Bankruptcy Code and is to be determined on a case-by-case basis.) Any one of these forms of adequate protection alone is sufficient to adequately protect a secured creditor's interest.

28.     Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *In re Dunes Casino Hotel*, *supra*, 69 B.R. at 793. Here, it is apparent that the Banks will suffer no such diminution.

29.     The Debtor proposes that the Banks receive post-petition replacement liens to the same extent, validity, priority, and nature as their pre-petition liens, respectfully—to the extent the Banks are ultimately determined to hold valid liens on the Debtor's assets. The Banks will also continue to receive interest payments. The use of cash to continue the Debtor's operations will increase by more than the cash used. Therefore, the Banks will suffer no diminution in value, and use of cash collateral is appropriate.

30.     Further, the Debtor must pay monthly equipment payments to continue with its operations. These monthly equipment payments total approximately $30,712, and include the payment of dumpsters supplied to customers into which debris is deposited. The Debtor proposes to defer all equipment payments owed during the first week of May, while the Debtor accrues money to pay off the liens held on its fifth truck (the "Additional Truck") by Four States Truck Service as a result of unpaid repairs on the Additional Truck. Once the Additional Truck is released by Four States Truck Service and is in use by the Debtor, the Debtor anticipates earning approximately $20,000 additional net income per month from operations derived as a result of the use of the Additional Truck. Accordingly, the Debtor proposes to defer the monthly

equipment payments until the Debtor is able to utilize the Additional Truck, and then to pay this deferred amount over a time frame of twelve weeks, commencing the week ending May 16, 2010, and ending the week ending July 4, 2010.

31.     The Debtor asserts that the request to use cash collateral is proper, reasonable and necessary to continue the Debtor's operations.  Approval of the Debtor's request to use cash collateral is in the best interest of the Debtor and creditors of the estate.

## Notice With Respect To Final Order

32.     Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that it be authorized to provide notice of the Final Hearing on this Motion by serving a copy of the Motion (to the extent not previously served), together with the Interim Order, in accordance with the terms thereof.

## Notice

33.     The Debtor has provided notice of the Motion to (i) the Office of the United States Trustee, (ii) twenty (20) largest unsecured creditors, (iii) the Banks, (iv) all parties to which monthly equipment payments are made, and (iv) all other persons and entities that have requested notice pursuant to Bankruptcy Rule 2002.

34.     Section 102(1) of the Bankruptcy Code defines "after notice and a hearing" to mean "after such notice as is appropriate in the particular circumstances."  The Debtor believes notice of the Motion satisfies this requirement and no further notice is required.

WHEREFORE, the Debtor respectfully requests that this Court enter an Order:

(i)     granting and approving the Motion;

(ii)    granting and authorizing the Debtor to use cash collateral on a thirty (30) day interim basis in accordance with the Budget attached hereto as Exhibit "A", and pursuant to the terms and conditions contained and described in the proposed Interim Order, a copy of which is attached hereto as Exhibit "B".

(iii)   approving the form and manner of service of notice of this Motion;

(iv)    scheduling a final hearing to consider entry of a Final Order granting and authorizing the Debtor to use cash collateral on permanent basis in accordance with and for the time period set forth in the Budget;

(v)     approving the form and manner of notice of the Final Hearing; and

(vi)    granting such other relief as the Court deems proper and just.

Dated: April 28, 2010          CIARDI CIARDI & ASTIN
      Wilmington, Delaware

Shannon D. Leight (No. 4115)
Carl D. Neff (No. 4895)
919 Market Street, Suite 700
Wilmington, DE 19803
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
sleight@ciardilaw.com
cneff@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Thomas D. Bielli, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
Tel:  (215) 557-3550
Fax:  (215) 557-3551

*Proposed Counsel to the Debtors*